IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MELINDA J. GIBEAU, ) | Civil Action No. 3:10-802-RMG-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rule 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB and SSI on April 27, 2006, alleging disability since April 5, 2006. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held March 2, 2009, at which Plaintiff (represented by counsel) and her father (William Gibeau) appeared and testified, the ALJ issued a decision denying benefits on April 14, 2009. The ALJ found that Plaintiff was not disabled because she was able to perform her past relevant work as a telephone answering service operator.

Plaintiff was thirty-five years old at the time of the ALJ's decision. She has the equivalent of a high school education and has past relevant work as a telephone answering service operator and restaurant manager.

The ALJ found (Tr. 10-13):

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.  The claimant has not engaged in substantial gainful activity since April 5, 2006, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: rheumatoid arthritis (20 CFR  404.l521 *et seq.* and 416.921 *et seq.*).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.927(b).  She is unable to climb ladders, ropes, and scaffolds, but may occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs.

6.  The claimant is capable of performing past relevant work as a telephone answering service employee. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from April 5, 2006 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

On January 25, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on March 30, 2010.

**MEDICAL RECORD**

Plaintiff was examined at the Grand Strand Regional Medical Center ("GSRMC") on September 25, 2005, for back pain and left leg pain. The impression was that Plaintiff had a mild case of sciatica. Vicodin was prescribed and Plaintiff was instructed to apply ice to the affected areas. Tr. 214.

On December 20, 2005, Plaintiff was examined at GSRMC for nagging, aching right knee pain that was worse when she walked and had been present for about a month. The impression was possible arthritic pain. She was instructed to follow up with her primary care physician. Tr. 212.

Dr. Jerry A. Schexnayder of Strand Regional Specialty Associates examined Plaintiff on February 1, 2006. Plaintiff reported a three-month history of right knee pain during stair climbing and prolonged walking. Examination revealed effusion in her knee and aspiration yielded 9 cc of fluid. Dr. Schexnayder's initial impression was possible anti-inflammatory arthritis of her right knee. Tr. 226-227. The aspirated fluid tested positive for rheumatoid factor and it was noted that Plaintiff's sedimentation rate was elevated. Tr. 228. Dr. Schexnayder referred Plaintiff to Dr. Stephen G. Gelfand with Intracoastal Arthritis & Rheumatology.

On February 16, 2006, Plaintiff reported to Dr. Gelfand that she had an eight-month history of polyarthralgias which first started in her elbows and involved her shoulders, right knee, and her hands, as well as pain and swelling in her right knee and hands over the prior three months. Examination revealed puffiness and tenderness of the second and third PIP joints and MCP joints in both of her hands; tenderness and synovial thickening of both wrists; slightly diminished range of motion in both wrists; decreased flexion in her left knee; synovitis, effusion, and limited flexion in her right knee; and tenderness and slightly limited range of motion in her right ankle. Dr. Gelfand's

impression was that Plaintiff had probable rheumatoid arthritis. He recommended additional laboratory testing, that Plaintiff continue taking Prednisone and begin Methotrexate therapy, and that she start physical therapy. Tr. 246-248.

Plaintiff continued treatment with Dr. Gelfand over the next several months. On May 5, 2006, it was noted that her rheumatoid arthritis was responding to treatment although her prescription of Methotrexate had gradually been increased. Even with the favorable response, Plaintiff noted continued pain and swelling in both hands and pain in her cervical spine region. Testing from the prior visit revealed that Plaintiff's rheumatoid factor was markedly elevated and her anti-CCP antibody was elevated. Dr. Gelfand increased Plaintiff's Methotrexate dosage, added Skelactin, and suggested that Plaintiff might be a candidate for the addition of a biological agent to supplement the Methotrexate. Tr. 242.

Treatment notes from Dr. Gelfand on June 23, and July 31, 2006 reveal that Plaintiff's rheumatoid arthritis was stable on her regimen of Methotrexate. Plaintiff continued to complain of some pain and swelling in her knees and ankles, as well as some limited range of motion in her neck with some spasms in her right trapezius. Tr. 261-262.

On July 26, 2006, Dr. George T. Keller, a state agency physician, reviewed Plaintiff's file. He opined, in light of her current treatment plan, that within twelve months of the alleged onset of disability date Plaintiff would have the residual functional capacity ("RFC") to lift twenty pounds occasionally and ten pounds frequently; stand/walk and sit for about six hours each in an eight-hour workday; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl. Tr. 251-258.

Plaintiff began seeing Dr. April Blue at Carolina Health Specialists as a primary care physician on August 4, 2006. She complained of neck and upper back pain, decreased sleep, and fatigue. Dr. Blue noted that Plaintiff was suffering from depression which might be related to her untreated hypothyroidism. Tr. 292. On August 18, 2006, Dr. Blue referred Plaintiff for an MRI of her cervical spine. Tr. 291.

On December 1, 2006, Dr. Katrina B. Doig, a state agency physician, reviewed Plaintiff's file and reached similar conclusions to Dr. Keller (i.e. that Plaintiff could perform light work with some postural limitations). Tr. 293-300. Dr. Jeffrey Vidic, Ph.D., a state agency psychologist, reviewed Plaintiff's records and completed a Psychiatric Review Technique form on December 5, 2006. Tr. 301-314. He opined that Plaintiff did not have a severe mental impairment. Tr. 301.

Plaintiff transferred her primary care to South Strand Internists and was initially seen by Dr. Brian Adler and Candyce McLeod, MSN, ARNP on July 21, 2008. Plaintiff indicated during this examination that she continued to have chronic joint/muscular pain all over her body; pain in her neck, shoulders, back, and hips; depression; and chronic fatigue. Physical findings included morbid obesity, swelling in her wrists and hands, crepitus in her right knee, and multiple trigger points. Plaintiff was diagnosed with polyarthralgia, chronic insomnia and fatigue, morbid obesity, and possible depression. A sleep study was requested. Tr. 357-358.

Treatment of Plaintiff at South Strand Internists continued from July 21, 2008 through January 22, 2009. Tr. 350-358. On August 20, 2008, Plaintiff complained of pain all over her body and Lyrica was added. Tr. 356. She complained of headaches and back pain when walking on September 10, 2008. She also noted she had been very depressed and tried to harm herself by slicing

5

her wrist. She reportedly spent most of her time in her room due to fatigue. Seroquel was added for treatment of depression and anxiety. Tr. 355.

On September 12, 2008, Plaintiff complained that Seroquel made her groggy, but she was sleeping better. Tr. 354. On September 17, 2008, Plaintiff complained of edema in her hands and feet, as well as low back pain. Depression was diagnosed and Plaintiff's Seroquel prescription was increased. Tr. 353. A lumbar spine MRI on October 1, 2008, revealed early degenerative changes at L5-S1. Tr. 331.

On November 11, 2008, Dr. R. R. Tupton, III, performed an eye examination. Plaintiff complained of increasing blurriness in her eyes over the prior two months. Examination revealed decreased tearing in her eyes and Dr. Tupton's assessment was questionable early Sjorgrens Syndrome, unspecified adverse effect of drugs, and Hydroxycholoroquine toxicity. He prescribed eye drops with a plan to consider eye plugs or prescribing Restasis upon her return if no improvement was noted. Tr. 371-372.

Plaintiff was examined by Dr. James W. Thrasher with the Department of Mental Health on January 13, 2009. Plaintiff reported she had battled depression for nearly twenty years and had been involuntarily hospitalized twice, once in Charleston and once in Columbia, for mental health reasons. She reported that when she was depressed she became short tempered, emotional, and tearful with suicidal ideation. She said she heard voices in the past criticizing her and telling her to hurt herself. She indicated she was currently taking Bupropion and Quetiapine (Seroquel) for her mental condition. Dr. Thrasher's diagnosed mood disorder with a GAF score 58 (indicating moderate symptoms or moderate difficulty in social or occupational functioning). He prescribed Ziprasidone and discontinued Quetiapine. Tr. 347-348.

Plaintiff saw Dr. Thrasher again on February 13, 2009. Plaintiff noted that Ziprasidone had caused some edema and it was discontinued. She described temperamental mood swings, an inability to sleep at night, and fatigue. Dr. Thrasher indicated that it was not clear if she was manic or hypomanic, but that she exuded symptoms of mood instability. Her GAF score remained essentially unchanged at 59 and he prescribed Ariprazole for mood stabilization. Tr. 345.

On November 11, 2008, Plaintiff continued to complain of low back pain and it was noted that she could not afford physical therapy for her back. Tr. 351. She later attended physical therapy from January 9 through February 6, 2009. Tr. 361-370. On January 22, 2009 she reported to providers at South Strand Internists that she had increased swelling over the prior couple of weeks in her feet and knees. Her weight was reported to be 289 pounds. Tr. 350.

After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council. Tr. 383-431; see Tr. 4. This evidence included a questionnaire completed by Ms. McLeod (and which appears to also have been signed by Dr. Adler) on May 20, 2009, in which Ms. McLeod assessed a variety of functional limitations that would preclude full-time work. Tr. 385-390. The remainder of the additional evidence consists of treatment records from Ms. McLeod, some of which are duplicate records of those that were before the ALJ, and others that documented Plaintiff's ongoing treatment for her condition (Tr. 391-412), as well as later examination reports dated after the ALJ's decision that are not retrospective to the relevant time period (Tr. 414-431).

## **HEARING TESTIMONY AND OTHER EVIDENCE**

In an undated, handwritten three-page letter, Plaintiff wrote that she was having a hard time writing because her hand hurt, she had chronic pain and fatigue, and she "had the depression for

7

awhile before [she] found out about the disease," which had recently been diagnosed "as mood swings with Bipolar." Tr. 202-204.

In a September 2006 Function Report, Plaintiff said that in a typical day she made breakfast, took her children to school, came home and usually sat down, cleaned up, watched television, and did things around the house until it was time to pick up the children. She helped her children with homework, talked to them, and went to bed. Tr. 182. Plaintiff reported she could not sleep well, but her medications sometimes made her sleep all day. Tr. 183. She said she could drive a car, shop in stores and by computer, handle her finances, and read. Tr. 185. She indicated (by not checking certain boxes on the form) that she did not have any difficulty with vision, memory, concentration, understanding, or following instructions, but checked a box indicating she had difficulty completing tasks. Plaintiff indicated she wore a brace/splint. Tr. 187-188.

In November 2008, Plaintiff's mother, a nurse practitioner, completed a series of medical questionnaires in which she opined that Plaintiff's pain, medication side-effects, and depression caused a number of functional limitations that would preclude her from sustaining full-time work (the limitations included that Plaintiff could not handle any level of stress, required frequent breaks and naps, could sit for only two hours total and stand or walk for less than two hours total in an eight-hour workday, and would miss more than four days of work per month). Tr. 315-327. There are no records indicating that Plaintiff's mother ever treated Plaintiff. The ALJ treated these records as third-party records.

At the March 2009 hearing before the ALJ, Plaintiff testified that she had three children, ages eighteen, sixteen, and fifteen. Tr. 18. She stated she left her last job as a general manager (where her duties consisted of waiting on tables, busing tables, and doing paperwork) because of pain and

8

the physical demands of her job which involved lifting up to fifty pounds and walking the majority of the time. Tr. 18-19. She testified that she weighed 230 to 240 pounds at the time of the hearing and weighed about 150 pounds when she was working. Tr. 19. She thought that her weight gain was caused by the medication she takes, including Seroquel and Prednisone. Tr. 20.

Plaintiff testified that she had chronic pain and swelling in multiple joints, fatigue from medications, blurry vision, and mood disorders. Tr. 21-29. She said she could not clean her house, cook, or shop for groceries for long periods; could not sit, stand, or walk for more than a few minutes or lift more than five pounds; and "pretty much" stayed in bed. During a typical day, she said she sat in bed and home-schooled her daughter. She said she did not want to drive due to her eye condition (blurry vision, double vision, and that she sometimes could not see). See Tr. 21, 31.

Plaintiff stated that she could not perform her past telephone-answering job because of hand pain and trouble seeing things on a computer. Tr. 34. She explained that her eye doctor said that if she wanted glasses to go get them, but that she did not need the glasses, so she decided not to get them because the doctor told her she did not need them. Plaintiff testified that Methotrexate made her pain better to the point she could tolerate it, but the drug did not eliminate her pain completely. Tr. 33-34.

At the hearing, Plaintiff stated that she took Flexeril, Effexor, and Lyrica for pain, these medications "mess with her mind," and she cannot put words together when she takes them. Tr. 24. She also said that she suffered side effects from her medications, including nausea, fatigue, and the need to take naps during the day.

The testimony of Plaintiff's father at the hearing supported Plaintiff's allegations of chronic pain, limited activities, and difficulty walking and driving. See Tr. 36-39.

9

**STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, supra.

**DISCUSSION**

Plaintiff alleges that the ALJ: (1) failed to consider all of her severe impairments and failed to properly determine her RFC; (2) failed to properly consider her credibility; and (3) failed to make a specific finding concerning the physical and mental requirements of her past relevant work. The Commissioner contends that substantial evidence[1] supports the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Act, and the decision is free of reversible legal error.

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

A.   Severe Impairments/RFC

Plaintiff alleges that the ALJ violated SSR 96-8p by failing to consider all of the relevant evidence in the record and failing to consider the limiting effect of all her impairments before assessing her RFC. Specifically, she argues that her vision problems and depression/mood disorders should have been classified as "severe" impairments and that the ALJ failed to properly consider the effects of each of these impairments on her RFC. The Commissioner argues that Plaintiff has not shown that these impairments are "severe"[2] impairments, and that any failure to consider whether Plaintiff's vision impairment is severe is harmless error.

The Commissioner contends that the failure of the ALJ to consider Plaintiff's vision impairment is harmless error because the ALJ found that Plaintiff's rheumatoid arthritis was a severe impairment at step two of the sequential evaluation process,[3] such that the ALJ continued further

---

[2] It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as:
  the abilities and aptitudes necessary to do most jobs. Examples of these include --
    (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
    (2) Capacities for seeing, hearing, and speaking;
    (3) Understanding, carrying out, and remembering simple instructions;
    (4) Use of judgment;
    (5) Responding appropriately to supervision, co-workers and usual work situations; and
    (6) Dealing with changes in a routine work setting.
20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

[3] In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See
(continued...)

11

analysis of all of the evidence. Although an ALJ's failure to consider whether an impairment is severe may be harmless where the ALJ discusses the evidence and limitations related to that impairment at step four, see Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (noting that "[e]ven assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless" and "[t]he decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4."), the ALJ here did not consider Plaintiff's vision impairment and does not appear to have considered all of the evidence concerning Plaintiff's mental impairment.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

The ALJ appears to have found that Plaintiff did not have a severe mental impairment because she only sought treatment from a mental health provider on two occasions. See Tr. 10. It is unclear from the decision whether the ALJ considered other medical evidence in the record concerning Plaintiff's mental health condition, including that Plaintiff reported a history of depression to primary care physician Dr. Blue (Tr. 292) and reported to Dr. Thrasher that she had a twenty-year history of

---

[3](...continued)
20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

12

depression including two involuntary stays at a mental health care facility (Tr. 347); was diagnosed with depression by Dr. Blue in August 2006 (Tr. 292); was diagnosed by another primary care provider with possible depression in July 2008 (Tr. 357-358), and was prescribed Seroquel for her mental condition after she tried to harm herself by slicing her wrist in September 2008 (Tr. 355). There is no indication that the ALJ considered Plaintiff's vision impairment, such that it is not clear whether the RFC determined by the ALJ is supported by substantial evidence. Plaintiff testified that she no longer drives because of her vision condition which she claims causes blurry, double-vision. She also testified that she had trouble seeing things on a computer. Her ophthalmologist noted that Plaintiff had excessive tearing, questioned whether further medication or plugs would need to be placed in her eyes to control the condition, prescribed glasses for Plaintiff, and questioned whether her condition could be part of Sjorgren's Syndrome.

B.     Credibility

Plaintiff asserts that the ALJ erred in discounting her credibility and testimony of the chronic pain and limitations she experiences. She argues that the ALJ mischaracterized the findings in the record that Plaintiff's rheumatoid arthritis "stabilized" with medication as an improvement in her condition, and the ALJ ignored evidence from South Strand Internists that Plaintiff consistently complained of chronic pain. Plaintiff also argues that the ALJ improperly discounted her credibility because she testified at the hearing that she weighed 150 pounds when working, but medical records revealed Plaintiff weighed between 227 and 245 pounds from July 2005 to February 2006. She also asserts that her testimony and that of her father indicates that her activities of daily living have significantly diminished. Plaintiff argues that the ALJ failed to address the side effects of her many prescription medications. Finally, she argues that her testimony is supported by the Medical Source

Statement prepared by Dr. Adler and Nurse Practitioner McLeod in May 2009 that was submitted to the Appeals Council. The Commissioner contends that the ALJ properly discounted Plaintiff's subjective complaints including her complaints of chronic pain and medication side effects because no treating or examining physician during the period at issue opined that Plaintiff needed to restrict her activities, was unable to work, or had any functional limitations despite her symptoms and side-effects, and because the record reflects that Plaintiff's rheumatoid arthritis symptoms were controlled with medication. Additionally, the Commissioner argues that any error by the ALJ concerning inconsistencies in Plaintiff's testimony concerning her weight was of little consequence because Plaintiff never claimed that her weight affected her ability to work during the period at issue and because any reliance on this factor was at most harmless error because the ALJ cited other reasons for discrediting Plaintiff's subjective complaints.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that

alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount Plaintiff's credibility is not supported by substantial evidence. The ALJ appears to have discounted Plaintiff's credibility in large part because he believed her testimony concerning her weight (that she weighed 150 pounds when she was working) was not credible. It is unclear, however, what time period the question referred to (as Plaintiff was working at her last job for approximately ten years) or to what time she was referring. Further, the relevancy of this testimony is questionable as Plaintiff did not claim she was unable to work based on her weight/obesity. The Commissioner argues that any error was harmless because the ALJ discounted Plaintiff's credibility based on other factors. Review of the decision, however, indicates that the ALJ expressly stated that the weight "inconsistency detracts from the claimant's credibility." Tr. 12. As discussed above, the ALJ does not appear to have considered all of the evidence in making his decision. Further, it is unclear whether the ALJ fully considered the side-effects of Plaintiff's medications.[4]

C.      Past Relevant Work

Plaintiff alleges that the ALJ erred by failing to make a specific finding concerning the physical and mental requirements of her past relevant work in accordance with 20 C.F.R. § 404.1560(b). Specifically, she argues that the ALJ failed to list any of the mental requirements of the job, and how such requirements would be affected by Plaintiff's nonexertional limitations that

---

[4]See 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

she testified to at the hearing and that are contained in the record. The Commissioner argues that the ALJ did not err as Plaintiff's past relevant work as a telephone answering service operator did not require the performance of work-related activities precluded by her RFC. Additionally, the Commissioner argues that information about Plaintiff's past relevant work is contained in the record in Plaintiff's Work History Report and the Dictionary of Occupational Titles clearly sets forth the physical and mental demands of the job as it is generally performed. The Commissioner contends that the ALJ was not required to list the mental demands of the job because the ALJ did not find that Plaintiff had any significant mental limitations, but any omission of specific discussion about the job's mental requirements was at most harmless error.

At the fourth step of the disability inquiry, a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy. SSR 82-61. The claimant bears the burden of establishing that he or she is incapable of performing his or her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

As the RFC and credibility analysis is not supported by substantial evidence, it is unclear whether the ALJ's determination that Plaintiff could perform her past relevant work is supported by substantial evidence because it is unclear from the analysis whether Plaintiff could perform her past relevant work with her mental and vision impairments. As noted above, Plaintiff testified that she would be unable to perform her past relevant work as a telephone answering service operator because of problems seeing the computer and because of problems with her hands. The ALJ did not address this testimony in his decision.

16

**CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to determine Plaintiff's RFC in light of all of her impairments, determine her credibility in light of all of the evidence, properly consider whether Plaintiff can perform her past relevant work, and to continue the sequential evaluation process if necessary.

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

January 11, 2012
Columbia, South Carolina