**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Melinda J. Gibeau, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:10-802-RMG |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner of ) | |
| Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain

relief from the final decision of the Commissioner of the Social Security Administration denying

her Disability Insurance Benefits and Supplemental Security Income. In accord with 28 U.S.C. §

636(b) and Local Rule 73.02, D.S.C., this matter was referred to the United States Magistrate

Judge for pretrial handling. The Magistrate Judge issued a Report and Recommendation dated

January 11, 2012 recommending that the decision of the Commissioner be reversed and

remanded. (Dkt. No. 12). The Commissioner filed objections to the Report and

Recommendation and argued that the decision should be affirmed. (Dkt. No. 15). After a careful

review of the record, the decision of the Administrative Law Judge ("ALJ"), the objections of the

Defendant, and the applicable legal standards, the Court adopts the Report and Recommendation

of the Magistrate Judge, reverses the decision of the Commissioner and remands the matter to the

Commissioner for further action consistent with this opinion.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and may accept, reject or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme of the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance" of evidence. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of factual findings that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a solid foundation for the [Commissioner's] findings . . . ." *Vitek*, 438 F.2d at 1157-58.

Rules and regulations of the Social Security Administration mandate that the Commissioner make a systematic and careful review of the medical record and other evidence

presented by the claimant, which includes the reviewing and weighing of all relevant opinions and diagnoses. The Commissioner must evaluate each disability claim utilizing a five step process, which begins at Step One with a determination of whether the claimant is still employed. 20 C.F.R. § 404.1520(a). If the claimant is not gainfully employed, the Commissioner must consider at Step Two the severity of all of the claimant's impairments. An impairment is "severe" if it "significantly limits" the claimant's "physical or mental ability to do basic work activities." § 1520(a)(4)(ii), (c). If the claimant has one or more "severe" impairments, the Commissioner must then consider at Step Three whether any of the severe impairments meet or equal a listing in Appendix 1, which would automatically establish the claimant's disability. § 1520(a)(4)(iii). If the claimant does not satisfy one of the listing requirements, the Commissioner must move to Step Four and assess the claimant's Residual Functional Capacity "based on all the relevant medical and other evidence." § 1520(a)(4)(iv), (e). Thereafter, the Commissioner must determine if the claimant is able to perform her past relevant work and, if not, whether there is other available work for the claimant to perform. § 1520(a)(4)(v), (g).

A claim of disability can be based on physical or mental impairments or a combination of both. The Commissioner is obligated to consider all "medically determinable impairments" and consider all medical evidence, opinions of medical sources and other evidence. § 404.1545. "Medical opinions" include "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments . . . including . . . diagnosis and prognosis . . . ." § 404.1527(a)(2). Special consideration is given under some circumstances to the claimant's treating physicians, and other factors that must be considered by the Commissioner in weighing medical opinions include

whether the physician has examined the claimant, the length and nature of the treatment relationship and whether the physician is a specialist. § 1527(d)(1)-(6). The Commissioner is obligated to "always consider the medical opinions" available in the medical record. § 1527(b); *see also,* SSR 96-8P, 1996 WL 374184 at *7.

**Discussion**

The record before the Commissioner indicates that Plaintiff offered evidence that she had a variety of impairments, including rheumatoid arthritis, chronic depression and reduced vision. After establishing that Plaintiff had not worked since April 5, 2006, allegedly as a result of these various impairments, the ALJ made a Step Two analysis to determine whether any of these alleged impairments were "severe". The ALJ found that Plaintiff had only a single "severe" impairment, rheumatoid arthritis. Record (hereafter "R") at 10. In regard to the Plaintiff's claim that her depression was a "severe" impairment, the ALJ found "[t]here is no evidence that this condition would more than minimally affect the claimant's ability to work." *Id.* The ALJ further found that the claimant "only recently sought mental health treatment" and was treated for her depression only in January and February 2009. *Id.*

The Court concurs with the findings of the Magistrate Judge that a review of the record demonstrates that the ALJ's findings regarding the claimant's depression are not supported by substantial evidence. (Dkt. No. 12 at 12-13). The records of a treating physician, Dr. James Thrasher, a board certified psychiatrist, diagnosed Plaintiff with a "mood disorder" and found that she was "struggling with chronic mental illness." R. at 345. Dr. Thrasher described Plaintiff in January 2009 as "exudes symptoms of mood instability" and reported a 20 year history of depression that had required two separate involuntary admissions to psychiatric facilities. R. at

346-47. Dr. Thrasher further documented that Plaintiff had been followed as a patient "in outpatient settings" and was being medicated by her primary care physician. R. at 347.

Dr. Thrasher rated Plaintiff on the Global Assessment of Functioning Scale ("GAF"), a common standard utilized in psychiatry. His documented ratings were 58 and 59, both of which fall into the range of "moderate symptoms" that can produce "moderate difficulty in social, occupational, or school functioning . . . ." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM IV") 32 (4th ed. 1994); R. at 345, 348.

The records of another treating physician, Dr. Brian Adler, a primary care physician, described in 2008 office records the patient's "chronic depression" and documented two prior episodes where Plaintiff had slit her wrist. R. at 355, 357. Dr. Adler was unable to determine if Plaintiff was trying to hurt herself or kill herself in these two episodes. R. at 355. Another treating primary care physician, Dr. April Blue, diagnosed Plaintiff with depression in 2006. R. at 292.

The record also contained a chart review conducted for the Social Security Administration by a psychologist, Dr. Jeffrey Vidic, in 2006. Dr. Vidic concluded that Plaintiff did not have a "severe" psychological disorder but, in all fairness to this expert, he did not have access to the comprehensive history and evaluation of Dr. Thrasher or any of the post 2006 medical records referenced above. The record does not document that Dr. Vidic ever examined or treated Plaintiff. R. at 301-314.

The findings of the ALJ of "no evidence" of any condition that would more than "minimally affect the claimant's ability to work" and the absence of any treatment for her depression other than in early 2009 are demonstrably not supported by substantial evidence. This

mandates a remand for a determination of whether the patient's long history of depression is a "severe" impairment and a proper assessment of this condition, in combination with other impairments, on the claimant's Residual Functional Capacity and her ability to perform her former employment or any other positions available in the national marketplace. The ALJ should also take care to weigh all medical opinions in light of the special considerations the regulations mandate for treating physicians, examining physicians and specialists. § 1527(d)(1)-(6).

The Magistrate Judge also noted the ALJ's failure to evaluate the Plaintiff's claim of impairment regarding her vision or to weigh the evidence in support of that claim. (Dkt. No. 12 at 11-13). The record indicates that Plaintiff was treated by Dr. Reuben Ryder Tipton, a board certified ophthamologist, for complaints of "blurry vision." Dr. Tipton's differential diagnosis included "early Sjogrens Syndrome", an autoimmune disorder. R. at 371-72. Plaintiff also testified that her vision impairment was related to another autoimmune disorder, her rheumatoid arthritis. R. at 21. She indicated that her condition caused her tear ducts to "dry up and it causes blurry vision and I can't see very well." *Id.* Plaintiff testified that she no longer is able to drive a car because of her impaired eyesight. R. at 31. She also testified she is unable to work effectively on a computer because of her vision difficulties. R. at 34.

The ALJ did not address Plaintiff's alleged visual impairment, which included a failure to determine if the impairment was "severe" and, whether the alleged visual impairment, in combination with the Plaintiff's other impairments, affected her Residual Functional Capacity and ability to perform work. This resulted in the Commissioner failing to consider "all medically determinable impairments" and all medical evidence and opinions of medical sources, as mandated by Social Security regulations. § 404.1545. This constitutes a separate and

independent basis for reversing and remanding the decision of the Commissioner.[1]

## Conclusion

The Court hereby adopts the Report and Recommendation of the Magistrate Judge. The decision of the Commissioner is **REVERSED** pursuant to Sentence Four of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) and **REMANDED** to the Commissioner for further action consistent with this Order.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
February __, 2012

---

[1] On remand, the Commissioner should consider the potential "side effects of any medication" in assessing Plaintiff's disability claim since the record contains evidence that medications for her various medical conditions may be producing fatigue, blurred vision and other complications. § 404.1529(c)(3)(iv). The ALJ's decision failed to address potential drug side effects.